85 So.2d 119 (1955)
Valerie DUPRE, Plaintiff-Appellee,
v.
Frederick J. WYBLE et al., Defendants-Appellants.
No. 4107.
Court of Appeal of Louisiana, First Circuit.
December 30, 1955.
Rehearing Denied February 3, 1956.
Writ of Certiorari Denied March 26, 1956.
Lawes, Cavanaugh, Hickman & Brame, Lake Charles, for appellant.
Chas. C. Jaubert, Lake Charles, for appellee.
TATE, Judge.
Defendants appeal from judgment awarding plaintiff workmen's compensation benefits for total and permanent disability. The District Court summarized the issues and its findings as follows:
"This is a suit brought under the Louisiana Workmen's Compensation Law wherein Valerie Dupre alleges that he was employed by Fred J. Wyble, an oil field contractor, as a laborer dismantling an oil field plank road and that while so employed on November 21, 1952, he sustained an injury to his left leg from which he has not recovered, in that as a result of the injury he has and is still suffering from a neurotic reaction, an emotional and general nervousness, which makes it impossible for petitioner to return and engage in his former occupation of farmer and laborer and that he is permanently and totally disabled within the meaning of the Workmen's Compensation Act of Louisiana, LSA-R.S. 23:1021 et seq.
"This suit is brought against the insured, Fred J. Wyble, and Consolidated Underwriters, the insurer of Fred J. Wyble.
"The injury was admitted but the severity of the alleged resultant condition was denied.
"The evidence adduced shows that plaintiff has been a farmer since he was old enough to work and that he has farmed continuously since that time and that he has done some off season work as a laborer on several occasions.
*120 "Subsequent to the injury, the plaintiff was treated by his family physician several months and later was examined by an orthopedist and subsequently by a neurosurgeon.
"From the examinations there appeared to be no organic reasons for the continuance of plaintiff's disability after March of 1953. He was then referred to Dr. Barclay Funk, a physician specializing in psychiatry.
"Assuming that the history furnished by the patient to the psychiatrist that the plaintiff was always a steady worker was true, Dr. Funk concluded that the plaintiff was not malingering but that the prolongation of his disability was from emotional factors which were precipitated by the injury, that plaintiff was physically able to return to this past occupation but that he was not emotionally able to do so.
"The plaintiff is a man of limited education and intelligence. The evidence discloses that he had worked steadily for a period of over twenty years as a farmer and laborer but that since the date of his injury he has performed but very little work and that he felt a pain in his left leg whenever he attempted to work.
"The Court must conclude from the evidence and its observation of the plaintiff that he is not malingering but is suffering from a neurotic reaction precipitated by the injury and that he is, under the Workmen's Compensation Law of Louisiana and the jurisprudence, permanently and totally disabled."
The only residual of the original large bump and discoloration resulting from the accident is a scar the size of a quarter, like a vaccination mark; and after the accident, plaintiff walked with a pronounced limp, holding his left foot turned inward, according to all lay witnesses and doctors testifying. Dupre was under treatment by his family physician for four months before discharge as physically cured, including two weeks in bed and three weeks on crutches; and the two orthopedic specialists testifying, as well as this personal physician, testified as of the time of discharge, there was nothing functionally wrong with Dupre's left leg and foot.
Essentially, we are called upon to determine whether this limp, the nervous disorder, the pain and suffering of which Dupre complains upon attempted use of the limb hurt in the accident, are a result of a traumatic psychoneurosis resulting from the accident, and as such, compensable; or whether, on the other hand, these symptoms constitute malingering, or pretended disability in order to obtain compensation.
Awards of compensation for disability because of neurosis resulting from an accident in the course of employment have been allowed by our Louisiana courts, Buxton v. W. Horace Williams Co., 203 La. 261, 13 So.2d 855; Ladner v. Higgins, La.App., 71 So.2d 242; Peavy v. Mansfield Hardwood Lumber Company, La.App., 40 So.2d 505; Lala v. American Sugar Refining Company, La.App., 38 So. 2d 415; Vega v. Higgins Industries, Inc., La.App., 23 So.2d 661; Porter v. W. Horace Williams Co., La.App., 9 So.2d 60; Vaughn v. Solvay Process Co., La.App. 1 Cir., 176 So. 241. "There is no doubt in our minds that nervousness, neurosis, or emotional disturbances, superinduced by injuries suffered by a workman, can be just as devastating to the ability to return to work as are physical or anatomical injuries, and are equally as compensable under the statute", Lala v. American Sugar Refining Company, La.App., 38 So.2d 415, at page 421.
The District Court, who saw and heard the lay witnesses, and relied upon the diagnosis of Dr. Barclay Funk of Lake Charles, the only psychiatrist testifying, found that Dupre's disability resulted from a true traumatic psychoneurosis, resulting and residual from physical injury sustained in the course of plaintiff's employment. We believe this finding is supported by the record and is not manifestly erroneous.
*121 Dr. Funk's diagnosis was that the physical injury was the "precipitating factor" which aggravated a latent mental insecurity or neurosis or emotional weakness into the totally disabling psychoneurosis from which plaintiff was suffering at the time of the trial. This diagnosis was based on the history obtained from plaintiff, and also certain physical findings, such as hyperactive reflexes, very moist and cool hands and feet, labile (unstable) pulse and blood pressure, etc. Dr. Funk described it as a form of psychoneurosis called a "conversion reaction": "certain conflicts, certain attitudes of the individual are repressed, and it is [i. e., they are] converted into a physical symptom which gives him adequate reason for not doing or facing things which he is hesitant to face or which he wishes to escape, without his realizing consciously what he is doing". It is called a traumatic neurosis, because precipitated by physical agency or trauma.
Defendants urge, first, that the limp which all witnesses state has affected plaintiff since the accident, is not authentic because: (1) orthopedic experts testify that walking with foot turned in as plaintiff does, would increase or cause pain, rather than diminish it; (2) the orthopedics who examined Dupre four months after the accident testified the left leg was not atrophied as compared to the right, which would be the normal result of favoring one leg over the other.
This opinion testimony is useful in evaluating Dupre's credibility and that of the lay witnesses; but it does not override the acceptance of such latter testimony as truthful by the trier of fact. Besides, as to the first-mentioned testimony, medical opinion as applied to what a normal person would or would not do, does not necessarily indicate the absence of a genuine limp in a neurotic person suffering from a genuine hysteria who adjusted his foot and walk in such manner to receive (imaginary) ease from genuinely-felt pain. The significance of the lack of atrophy is lessened by the admission of both specialists that both legs might have atrophied if there was disuse of both after the accident, and also by the testimony of Dupre's personal physician that perhaps atrophy could be inhibited by Dupre's conscientious effort to follow his doctor's instructions to use the affected leg as much as possible.
Defendants further urge that Dr. Barclay Funk's psychiatric diagnosis and the District Court's acceptance thereof depend upon the truthfulness of the history upon which this diagnosis was based. They allege that the history was not correct: for instance, Dr. Funk assumed Dupre had acquired 34 acres of land by his own efforts, whereas his wife had inherited same; but Dupre through his own efforts had constructed and paid for a residence thereupon, had purchased a truck and complete farm implements, etc. Dr. Funk had assumed that Dupre did public work whenever farming work was slight, whereas it turned out he did so only on occasion, and mostly throughout the war years. But in the main outline, as found by the District Court, Dupre had been an industrious and hard working farmer prior to the accident, and after the accident was unable to work; and Dr. Funk's diagnosis basically concerned whether Dupre's present helplessness was consistent with or differed from his former personality. If there were a basic difference, he explained it as due to a genuine psychoneurosis resulting from the accident, for certain psychiatric reasons it is unnecessary to detail.
Finally, defendants urge that even if plaintiff is disabled by a psychoneurotic condition, this condition was pre-existing the accident and is therefore not compensable. However, "the issue in this case under the law is not whether the injury was the sole and proximate cause of the plaintiff's present incapacity to work but whether the accidental injury aggravated and brought into active play his previous neurotic, mental and nervous troubles and was, therefore, the proximate cause of his present disability. (cases cited)", Buxton v. W. Horace Williams Co., 203 La. *122 261, 13 So.2d 855, at pages 856-857. "As in other connections, a pre-existing weakness in the form of a neurotic tendency does not lessen the compensability of any injury which precipitates a disability neurosis," Larson, Workmen's Compensation Law, Section 42.22.
The evidence indicates that before the accident the emotional defect was latent and had produced no disabling symptoms; but following the accident, under the hysteria or neurosis diagnosed as genuine, Dupre appears in genuine pain when he attempts to use the affected left leg, and is affected by a severe emotional disorder causing nervousness, sleeplessness, and loss of weight. Thus the present case is distinguished from Mouton v. Gulf States Utilities Co., La.App. 1 Cir., 69 So.2d 147, where although the employee had suffered from nervous spells before the accident, he continued working for some time thereafter without difficulty, so the recurrence of the nervous spells was held not related with sufficient certainty to the accident; and also from Jackson v. Southern Stevedoring Company, La.App., 65 So.2d 674, where the accident was held to have no relation to the nervous condition, which manifested the same symptoms long before the occurrence of the accident.
Inadvertently, the District Court allowed recovery to plaintiff of the sum to $500 medical expenses as prayed for. Although the record indicates that it was necessary for plaintiff to spend various sums for medicines as a result of his disability, there is no proof as to these amounts. Plaintiff's claim in that regard will therefore be non-suited, subject of course to credit to defendant for payment of the attending physician's services for treatment of plaintiff over a period of four months, proven by the record.
For the above and foregoing reasons, the judgment herein will be amended so as to non-suit without prejudice plaintiff's claim for medical expenses up to $500 prayed for, subject to credit to defendants for medical expenses expended on his behalf; and as amended, it will be affirmed in all other respects. Costs to be paid by defendants-appellants.
Amended and affirmed.