LANDRY, Judge.
Plaintiff, Mrs. Curtis Barbay (Appellant) a cook in the employ of St. Tammany Parish School Board (School Board), appeals a judgment rejecting her demands against the School Board’s insurer, Fireman’s Fund American Insurance Companies (Fireman’s), for maximum workmen’s compensation benefits. Appellant’s claim of total permanent disability, resulting from a work related fracture of a bone in her right foot, was dismissed upon the trial court’s finding that compensation benefits were paid until disability ceased. We affirm.
The accident occurred October 12, 1966, while Appellant was mopping the floor of a school cafeteria. A table, on which chairs had been stacked to facilitate mopping, collapsed and struck Appellant’s foot. The sole issue presented by this appeal is whether Appellant’s disability continued beyond the period during which compensation payments were made.
Plaintiff, who was approximately 52 years of age at the time of the accident, immediately reported the incident to her superior, who advised Appellant to seek medical assistance. Four or five days after the incident, Appellant sought medical aid of a Dr. Heidelberg, General Practitioner, who referred Appellant to Dr. Jack Diamond, a General Practitioner who did some surgery and orthopedic work. X-rays by Dr. Diamond revealed a fracture of the first metatarsal of the right foot. An ace bandage was applied and Appellant advised to walk on crutches to avoid weight bearing by the injured member. After four or five days, the ace bandage *494 was replaced with a short leg walking cast which was removed in mid-November, 1966. For approximately 18 months following the accident, plaintiff was unable to resume her former employment. She was paid compensation during this period of disability. Thereafter, Appellant obtained employment as a waitress in which occupation she was engaged at the time of trial.
The record discloses that although Appellant had bunions on both feet before the accident, and also some existing arthritis in these extremities, she performed her duties without complaints of pain. Since her employment as a waitress, she complains of constant pain in her foot. She also experiences swelling of the right foot at the end of a day’s work. According to plaintiff, the condition is so bad that she cannot work full time as a waitress, neither can she do her housework as she could prior to her injury. These complaints and the alleged resultant disability were confirmed by the testimony of plaintiff’s husband and also by plaintiff’s adult son, Ricky Barbay, who lived with his parents. The record further discloses that since the accident, Appellant has experienced no difficulty with her uninjured left foot.
Appellant contends the trial court erred in failing to follow that line of jurisprudence which holds that an employee free of pain prior to an injury, who experiences pain following injury, is entitled to the presumption that the post injury pain was caused by the injury, even though the complaints of pain are substantiated only by subjective evidence. In so contending, Appellant cites and relies upon Bourque v. Monte Christo Drilling Corporation et al., La.App., 221 So.2d 604; Gates v. Ashy Construction Company, Inc., La.App., 171 So.2d 742; Nixon v. Pittsburgh Plate Glass Co., La.App., 161 So.2d 361. Appellant concedes the foregoing rule is subject to the provision that the medical evidence must show a reasonable possibility of causal relation between the accident and the disabling condition.
Appellant maintains all requirements of the foregoing rule have been met because: (1) Plaintiff was free of pain before the accident, but has been in constant pain since; (2) Since the accident, plaintiff has suffered no pain in the uninjured left foot which was in substantially the same condition as the injured foot prior to the accident, and (3) The testimony of one medical expert attributes the post injury pain and swelling to the injury.
Dr. Diamond first saw Appellant on October 17, 1966. X-rays disclosed a fracture of the first metatarsal on the right foot. Treatment consisted of application of an ace bandage for four or five days followed by placing the foot in a short leg cast. On November 4, Dr. Diamond again X-rayed the injured foot. Dr. Diamond removed the cast on November 18, and also took more X-rays. Appellant was last seen by Dr. Diamond on December 3, 1966, and discharged that day after X-rays were taken. On this occasion, Appellant made no complaints of pain. In addition to the fracture, Dr. Diamond found a mild hallux valgus (bunions) and some arthritis in the metatarsal-phalangeal joint of the injured foot. He also noted the fracture was not at or in the joint, but in the proximal third or at the junction of the. proximal and middle third of the bone, approximately one and one-half inches above the joint. In essence, Dr. Diamond testified the X-rays showed no progression of the arthritic condition. Neither could he state that immobilization of Appellant’s foot in the cast aggravated either plaintiff’s pre-existing arthritis or bunions.
On March 21, 1967, Appellant was examined by Dr. Louis F. Matta, Orthopedic Surgeon. Appellant related a history -of the accident, and of having pain during the first week or two her leg was in the cast, but that the pain then ceased. Appellant complained of pain in the right foot, but stated that the pain was never localized, it being sometimes at the instep and sometimes in the heel. Plaintiff was found to be walking without a limp or any other *495 visible indication of limitation of motion. The presence of bunions on both feet was noted. Manipulation of the injured foot produced varied reactions on Appellant’s part. She complained of pain on certain manipulations which later repeated evoked no complaint of pain. Dr. Matta concluded Appellant was greatly exaggerating her complaints of pain. Examination disclosed a well healed, nondisplaced fracture of the proximal third of the first metatarsal of the right foot. No swelling or other deformity of the foot was observed other than the presence of bunions. Dr. Matta noted marked degenerative changes in the M.P. joint of Appellant’s right great toe accompanied by a thinning of the joint space. He considered Appellant’s complaints purely subjective and could find nothing to link Appellant’s complaints with the fracture. On November 26, 1968, Dr. Matta again saw Appellant who then complained of swelling in her right foot after prolonged standing or walking. Dr. Matta observed no evidence of swelling and also noted that plaintiff walked without a limp or any other sign of difficulty. X-rays taken on this occasion showed no meaningful change since Appellant’s first examination. No objective findings were observed which Dr. Matta could attribute to the fracture. Dr. Matta concluded plaintiff might have painful feet, but such condition was not related to the injury, but rather to the fact that Appellant had bunions and varicose veins which conditions are known to produce painful feet. In short, Dr. Matta found that Appellant had long since attained her pre-injury status, and that she had no pain or disability residual attributable to the accident. He was likewise of the view that the immobilization of the foot resulting from the cast did not aggravate Appellant’s pre-existing arthritis.
On May 15, 1967, Appellant was examined by Dr. Raoul Rodriguez, Jr., Orthopedic Surgeon, at the request of Appellant’s counsel. Plaintiff complained of localized pain over the first metatarsal of the right foot and of swelling of the foot. X-rays showed a bilateral bunion on the right foot as well as some degenerative arthritis of the first metatarsal-phalangeal joint of the great right toe. He recommended a buni-onectomy. Dr. Rodriguez was of the opinion that plaintiff’s complaints of pain would gradually improve, but that injuries of the nature involved quite often took long periods to heal. He attributed some of Appellant’s discomfort to the prior fracture.
Appellant was examined by Dr. Lynn B. Hamilton, Orthopedist, on March 16, 1970. Dr. Hamilton found that Appellant had a good gait and posture. He found normal pulse in the affected area and observed the deep tendon reflexes to be brisk and equal. No loss of sensation was found. Some limitation of motion and some pain upon complete extension of the right first metatar-sophalangeal joint was noted. Dr. Hamilton considered that the pain could be from the bunion on Appellant’s right foot as well as from the arthritis noted in the first metatarsophalangeal joint. He was of the opinion the fracture itself would not be painful. He also expressed the view that immobilization of Appellant’s foot in the cast for six to eight weeks following injury could have aggravated the arthritic condition present in the first metatarsopha-langeal joint.
The numerous X-rays taken of Appellant’s foot were submitted to Dr. Robyn Hardy, expert radiologist for examination and evaluation of the progress of Appellant’s arthritis as revealed thereby. Without having examined Appellant and based solely on the X-rays, Dr. Hardy concluded that the degenerative arthritic condition of the first metatarso-phalangeal joint of Appellant’s right foot showed no significant changes.
It is elementary that in a compensation case, the employee must establish every element of his cause by the requisite preponderance of evidence, and that proof which establishes a mere possibility will not suffice. Roberts v. M. S. Carroll Co., La.App., 68 So.2d 689.
*496 After considering the evidence, the trial court in effect found that, although he was impressed with the sincerity of Appellant and her witnesses, the medical evidence did not establish a reasonable possibility of causal connection between the accident and Appellant’s continued pain as required by the authorities cited and relied upon by Appellant.
It is well settled that the determination of facts made by a trial court will not be disturbed on appeal unless shown to be manifestly erroneous. Cavender v. Flenniken Construction Co., La.App., 247 So.2d 652.
In this instance, not only do we fail to detect manifest error, we find no error whatsoever. The judgment of the trial court is affirmed at Appellant’s cost.
Affirmed.